[L.A. No. 29739. In Bank. Oct. 20, 1970.]

JOE M. GARZA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
McDONNELL-DOUGLAS AIRCRAFT COMPANY et al., Respondents.

**COUNSEL**

Levy & Van Bourg and Mervin N. Glow for Petitioner.

Rupert A. Pedrin, Sheldon M. Ziff, Gabriel Sipos, Clopton & Penny and Mort L. Clopton for Respondents.

**OPINION**

**BURKE, J.**—Petitioner seeks review of the appeals board's decision upon reconsideration in which the board held, contrary to the finding of the referee, that petitioner did not sustain an industrial injury. We have concluded that, since the board's decision lacks the support of substantial evidence, it cannot stand.

On the date of the alleged injury, January 5, 1969, petitioner was employed as a spray painter and was engaged in painting a DC-9 airplane. At

the hearing before the referee petitioner testified that he injured his back while attempting to push into position a paint stand approximately 14 to 16 feet high and 6 to 8 feet wide. According to petitioner, the stand had a partially flat tire and was difficult to roll. On pushing the stand with his shoulder, petitioner felt something "foreign" in his back, and a sharp pain in his tailbone. He became dizzy and noticed a numbness in his left cheek, hand and leg, and a pain in his left shoulder and left side of his chest. A day or two later, petitioner told his foreman, Vlahos, and his leadman, Henry, that he had to go to the hospital; although petitioner mentioned having a pain in his cheek and possible sinus trouble, he did not report the back injury to them until January 16, and did not report his injury to his employer's compensation coordinator until January 24.

Petitioner was admitted to White Memorial Hospital on January 8, complaining of pain on the left side of his face, side and lower ribs, and motor difficulties in his lower extremities. He first saw a dentist, who found nothing wrong with petitioner's teeth and who referred petitioner to other doctors. Apparently, petitioner did not advise the doctors of his back injury until January 13, the date of a consultant's report which mentions petitioner's account of the January 5 incident. Dr. Waters examined petitioner on January 24; his report states that although he had not examined petitioner's back completely, he considered the case to be "non-industrial," noting that "Injury not reported until 1-24-69 (19 days after incident)."

Dr. Brown, an orthopedist, examined petitioner on January 30, and subsequently performed an exploratory laminotomy which disclosed that petitioner had a herniated L 4-5 disc, with impingement of the nerve root at the fifth lumbar nerve root, and marked scarring, both anterior and posterior, to the dura. Both the disc and the scar were totally removed, and petitioner's condition improved. Thereafter, Dr. LeMoncheck examined petitioner on June 30, and concluded that "a major portion" of petitioner's permanent disability would be attributable to prior back injuries, although there may be some disability resulting from the January 5 incident.

Medical records disclosed that petitioner had undergone prior back surgery in 1954, and that he had complained of subsequent back injuries or pain from time to time thereafter. When asked why he delayed in reporting the January 5 injury to his employer or his doctors, petitioner testified that he had hoped that his condition would soon improve, and feared that he might lose his job for failing to advise his employer regarding his prior back injuries.

The referee found that petitioner did suffer an industrial injury on January 5, and allowed temporary total disability, medical expenses and continuing disability, putting the issues of permanent disability and apportionment

off calendar. Respondents (employer and compensation carrier) petitioned for reconsideration, and the referee, in his opinion on petition for reconsideration, set forth the reasons why he recommended denial of reconsideration, making it clear that he believed and relied upon petitioner's testimony regarding his delay in reporting the injury.[1]

■ The appeals board reviewed the evidence and granted reconsideration, noting that petitioner had made no report of the injury to his coemployees or employer immediately following the alleged injury; that petitioner did not inform his doctors of the accident until January 13; and that petitioner failed to inform his employer's compensation coordinator thereof until January 24. The board emphasized petitioner's failure to notify his doctors of the incident, stating that "It is not reasonable to assume that applicant would seek treatment and then not advise the doctors of the condition which allegedly played a part in compelling him to seek such treatment."[2] The board also pointed out that although petitioner testified that he had had no problems with his back since his prior operation in 1954, his medical records disclosed that he had made several similar complaints thereafter.

Consequently, the board concluded that "On the basis of applicant's failure to report the alleged injury initially to either his co-employees or the doctors from whom he sought treatment and his failure to testify as to all his back complaints prior to the alleged incident, we find applicant's testimony as to the occurrence of an event on January 5, 1969, cannot be believed. Where circumstantial evidence is in conflict with the direct testimony of a

---

[1]The referee stated that "In relying on the testimony of the applicant, the Referee did not reject the other testimony in the case, as it would appear to be consistent with the applicant's testimony. The reason for the delay in reporting the injury would appear to be quite plausible in this case. As a result of a head injury on May 22, 1968, while working for the defendant employer, applicant had been warned that his failure to report a pre-existing brain injury, was grounds for his dismissal. When the applicant then sustained a back injury, he was again confronted with the decision as to whether to report the injury, and have the employer finding out about his pre-existing back surgery, or whether he should delay reporting the injury in the hope that his back complaints would be resolved without further treatment.

"Considering the fact that the applicant was 50 years of age at the time of his back injury, and the fact that he had testified that prior to his obtaining this job with the defendant employer, he did have some difficulty in obtaining work because of his pre-existing injuries, it would appear that the delay of the applicant in reporting the injury was reasonable under the circumstances, and lends credence to his testimony. The applicant, had in fact, reported his injury to his assistant foreman, Dino Vlahos, on or about January 16, 1969, approximately 11 days after the injury. At the time that the applicant went to the hospital on January 8, 1969, he had made complaints of pain on the left side of his face, left side, and lower ribs. He was first referred to a dentist, who found nothing wrong, and after that was referred to a medical consultant, Dr. Djang. At the time of his consultation with Dr. Djang, he informed the doctor that the first time he experienced pain was while pushing a heavy cart at work."

[2]At the hearing petitioner testified that he was afraid that the doctors would inform his employer of his back condition and that petitioner would thereupon lose his job.

■

witness, the credibility of the witness and the weight to be given his testimony are matters within the province of the trier of fact. Therefore, we conclude that applicant did not sustain an injury arising out of and occurring in the course of his employment as alleged herein. We find his back complaints and the treatment obtained therefor are attributable to the pre-existing condition reflected in the record."

■ Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. (*Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300].) This rule is binding upon the board and this court. (*Id.* at p. 439.) ■ Moreover, although the board is empowered to resolve conflicts in the evidence (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 93 [199 P.2d 302]; *Pacific Freight Lines* v. *Industrial Acc. Com.,* 26 Cal.2d 234, 240-241 [157 P.2d 634]), to make its own credibility determinations (*McAllister* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313]; *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287]; *Alexander* v. *Workmen's Comp. App. Bd.,* 262 Cal.App.2d 756, 758 [69 Cal.Rptr. 190]; *Wilhelm* v. *Workmen's Comp. App. Bd.,* 255 Cal. App.2d 30, 33 [62 Cal.Rptr. 829]), and upon reconsideration to reject the findings of the referee and enter its own findings on the basis of its review of the record (Lab. Code, § 5907; *Buescher* v. *Workmen's Comp. App. Bd.,* 265 Cal.App.2d 520, 529 [71 Cal.Rptr. 405]; *Wilhelm* v. *Workmen's Comp. App. Bd., supra; Montyk* v. *Workmen's Comp. App. Bd.,* 245 Cal. App.2d 334, 335 [53 Cal.Rptr. 848]), nevertheless, any award, order or decision of the board must be supported by substantial evidence in the light of the entire record (Lab. Code, § 5952; *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432]).

In *LeVesque, supra,* this court rejected prior decisions which suggested that the board's decision would be sustained if supported by any evidence whatsoever, and we determined that the test of substantiality must be measured on the basis of the entire record, rather than by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence. (1 Cal.3d at pp. 638-639, fn. 22.) ■ Upon reviewing the entire record in this case, we have concluded that the evidence relied upon by the board to discredit petitioner's uncontradicted testimony was insubstantial and cannot support its decision.

■ As a general rule, the board "must accept as true the intended mean-

ing of [evidence] both uncontradicted and unimpeached." (*LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 639; *McAllister* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 408, 413; see *Wilhelm* v. *Workmen's Comp. App. Bd., supra,* 255 Cal.App.2d 30, 33.) At the hearing, respondents made no effort to impeach petitioner's testimony by showing, through medical opinion, that he suffered no injury on January 5, or by proving that such an injury could not have occurred in the manner testified to by him. Indeed, with one possible exception,[3] the evidence relied upon by the appeals board sustains petitioner's assertion that he suffered an industrial accident on that date. There is no question that petitioner did in fact have a back condition which ultimately required surgery to correct, and petitioner adequately explained his reasons for not reporting his injury to his employer or doctors. ■ As stated in *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 440, "It should be stressed that where the undisputed evidence points towards an industrial injury had the board any doubts as to the cause of the injury, it has the means to resolve those doubts. Upon the filing of a petition for reconsideration the board may direct the taking of additional evidence (Lab. Code, § 5906), and the board is given power to direct any employee claiming compensation to be examined by a physician (Lab. Code, § 5701). In the instant case, the board did not follow this procedure and attempt to resolve any doubts it may have had with respect to the inference of industrial causation. Instead it determined in the absence of any supporting evidence to reject the inference of industrial causation, and this it may not do."

■■ Moreover, the board's rejection of petitioner's testimony in this case is contrary to the determination of its own referee, based upon his observation of petitioner on the witness stand, that petitioner in fact suffered an industrial injury on January 5. ■ Although the board is entitled to reject the referee's findings on credibility matters if substantial evidence

---

[3]As mentioned above, Dr. Waters' report indicated that he considered petitioner's case to be "non-industrial." However, he did not completely examine petitioner's back, and his opinion appears to be based upon the fact that petitioner delayed in reporting his injury to his employer. An expert's opinion which rests upon guess, surmise or conjecture, rather than relevant, probative facts, cannot constitute substantial evidence. (*Smith* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 588, 593 [78 Cal.Rptr. 718, 455 P.2d 822]; *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786, 792 [69 Cal.Rptr. 68, 441 P.2d 908]; *Owings* v. *Industrial Acc. Com.,* 31 Cal.2d 689, 692 [192 P.2d 1].) Moreover, in its opinion on reconsideration the board did not purport to rely upon this portion of Dr. Waters' report. Since the board is required by law to state all the evidence upon which it relies and to specify in detail the reasons for its decision (Lab. Code, § 5908.5; *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 440-441; *Evans* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]), we need not consider the force and effect of evidence upon which the board did not rely.

supports contrary findings, the degree of substantiality required to sustain the board in such cases should be greater than that afforded by the evidence relied upon herein. As stated by this court in *In re Branch,* 70 Cal.2d 200, 203, footnote 1 [74 Cal.Rptr. 238, 449 P.2d 174], with respect to review of referee's findings in habeas corpus cases, "A referee's findings of fact are, of course, not binding on this court, and we may reach a different conclusion on an independent examination of the evidence produced at the hearing he conducts even where the evidence is conflicting. [Citation.] However, where the findings are supported by 'ample, credible evidence' [citation] or 'substantial evidence' [citation] they are entitled to great weight [citations] because of the referee's 'opportunity to observe the demeanor of the witnesses and weigh their statements in connection with their manner on the stand . . . .' [Citation.]"

We conclude that the board failed to accord to the referee's findings the great weight to which they were entitled, and instead rested its decision upon circumstantial evidence which, at best, was speculative and conjectural and which petitioner's uncontradicted testimony rebutted. ■ An award based solely upon conjectural evidence cannot be sustained. (*Travelers Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 685, 687 [203 P.2d 747].) ■ Similarly, the denial of compensation benefits cannot rest upon the board's mere suspicion or surmise, in view of the policy of the law to resolve all reasonable doubts in the employee's favor.

The decision of the appeals board is annulled and the case remanded to the board for proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.