[Civ. No. 1333. Fifth Dist. Jan. 25, 1971.]

GALE R. RUSHING, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
EDWARD CATE, JR., et al., Respondents.

## COUNSEL

Kenneth F. Forbes for Petitioner.

Rupert A. Pedrin, Marcel L. Gunther, Hanna & Brophy and Richard Brophy for Respondents.

## OPINION

**GARGANO, Acting P. J.**—Petitioner seeks a review of the opinion and order of the Workmen's Compensation Appeals Board (hereafter referred to as the Board) denying reconsideration of the referee's findings and award disallowing petitioner's claim for workmen's compensation benefits; the referee found that petitioner's testimony that he was injured at work was a fabrication, and the Board sustained the finding.

At the time of his alleged injury, petitioner was employed by respondent Edward Cate, Jr., as a working ranch foreman. He testified that September 23, 1969, he and William T. Phillips, a farm laborer, were hooking up a cultivator to a tractor when the bolt broke, causing the weight of the cultivator, between 400 and 500 pounds, to fall upon him. He told Phillips to check the irrigation water because he was going to the house as his back was hurting. On the following day petitioner could not get out of bed but did not consult the doctor until almost two weeks later because he thought he would get better. He consulted Dr. C. M. Mathias on October 7, 1969; he later informed the doctor that he injured his back while moving heavy equipment. Petitioner stated that after four weeks of treatment his back became worse, and Dr. Mathias referred him to Dr. J. C. Williams. Sometime later he consulted an attorney and was referred to Dr. R. F. Jones.

In a written report, Dr. Jones diagnosed petitioner's back trouble as a probable rupture of the lumbar intervertebral disc and attributed the injury to the cultivator incident. Dr. Williams, on the other hand, while agreeing that petitioner had "an acute disc problem in the low back with a left-sided radicular radiation," opined that the injury was not related to petitioner's work primarily because the symptoms began in the evening and were not preceded by any unusual incident. In his letter to respondent insurance carrier, the doctor stated: "He is a 48-year-old ranch foreman who states that he had no difficulty with his back whatsoever until September 23, 1969. That evening after work he began noting some discomfort in the low lumbar midline which became progressively worse. He does not recall any incident at work which was different from the ordinary and had no back pain at work associated with anything that he did during the preceding day. Furthermore, he did not do anything during the day preceding the onset of the symptoms any different from his usual work."

In a subsequent letter Dr. Williams added: "I discussed with him again the reason why I did not think that this was a compensation case. He again could not recall any injury having taken place or anything unusual about his work that day. However, his wife who was present, was more than somewhat aggressively positive that he had been injured at work and that the

compensation insurance carrier was liable for his care. I could not get any history of injury, however, from either one of them, only the general statement that it must have been due to his employment as he had not had trouble with his back before."

The record reveals that the referee disbelieved petitioner's testimony as to how he was injured and denied an award because petitioner failed to report the bolt breaking and machine falling incident to Dr. Williams. In his report and recommendation on petitioner's petition for reconsideration, the referee had this to say: "It was after petitioner consulted counsel . . . that the history of the dramatic accident first came to light by way of the 'Application For Adjudication of Claim.' As if that were not incredible enough in and of itself, *one week later,* on December 1, 1969, when re-examined by Dr. Williams, the doctor was again unable to elicit from him any history of injury whatever and applicant conceded in testimony that, upon being asked by the doctor about a specific incident, he 'did not tell him anything.' Incidentally, Dr. Williams has been known to me for many years as a competent orthopedist with extensive practice in treating the industrially injured. His patient histories are reliable and, indeed, petitioner did not question them in this case.

"The conclusion which, I submit, is warranted from the foregoing is that the history petitioner gave to Dr. Jones and his attorneys and which he repeated in testimony is not credible."

The record further reveals that the Board denied petitioner's petition for reconsideration for essentially the same reason. The Board noted that petitioner told Dr. Mathias that he was moving heavy equipment in the shop and that his back started to hurt on the following morning but did not mention the "bolt breaking nor the machine falling."[1] Referring to that report and to Dr. Williams' letters, the Board determined that: "The inconsistencies between appellant's testimony and the histories given to Dr. Mathias and Dr. Williams is a circumstance which impairs the credibility of his testimony."

We have concluded that the Board's decision is not founded on substantial evidence. All medical reports substantiate petitioner's claim that he was having considerable trouble with his lower back and that the trouble was caused by a probable rupture of the lumbar intervertebral disc. Moreover, even Dr. Williams' report, upon which both the Board and referee relied to deny the award, allows for the possibility that petitioner's back

---

[1] Dr. Mathias's report contained this notation: "Patient states he was moving equipment in the shop and the next morning is when his back started hurting him. Patient told us today, 10-20-69, that he was covered under compensation."

trouble was caused by his work. Dr. Williams' opinion that the injury was nonindustrial was based on the assumption that the symptoms began during the evening and were not preceded by any unusual incident; this assumption in turn was based on petitioner's failure to mention the cultivator incident. However, petitioner testified that his back commenced to hurt on September 23, 1969, immediately after he took the full weight of the cultivator, and his testimony was corroborated by the farm laborer, William T. Phillips; Phillips testified that he was helping petitioner to attach the cultivator to a tractor when the bolt broke and that afterward petitioner said he was going to the house because his back "was hurting." Furthermore, petitioner's testimony as to the manner in which he was injured was partially corroborated by Dr. Mathias' report; although the report does not mention the cultivator incident, it states that petitioner told the doctor that he was moving heavy equipment; also, the description of petitioner's symptoms is consonant with his statement that he could not get out of bed on the following day.[2]

In sum, it is evident that petitioner's claim for an industrial award was denied primarily because both the Board and the referee disbelieved his testimony. In view of the affirmative evidence in petitioner's favor, if the Board had any doubts it should have called Dr. Williams to testify instead of relying almost entirely on the doctor's hearsay statements. Because Dr. Williams' hearsay opinion that the injury was nonindustrial was ambivalent, the Board should also have required petitioner to submit to an examination by another physician. His testimony was based in part upon the assumption that the petitioner did not experience any pain while at work; his statement, however, permits the conclusion that a person could sustain an injury while at work even though he did not experience immediate pain or other symptoms. Because Dr. Jones' opinion was based on the medical history which the petitioner gave him, there was no positive medical opinion that the petitioner could not have sustained the injury at work even if severe symptoms appeared at a later time as Dr. Mathias' report indicated. This is the kind of medical opinion that the Board could have obtained by either calling Dr. Williams or another medical witness. As the Supreme Court stated in *Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300]: "It should be stressed that where the undisputed evidence points towards an industrial injury had the board any doubts as to the cause of the injury, it has the means to resolve those doubts. Upon the filing of a petition for

---

[2]Dr. Mathias' report described the nature and extent of the injury as follows: "Tender low back especially on left side at first. Today, 10-20-69, pain has shifted to right back and down right thigh, goes to knee. He can't bend over, backwards or sideways without pain. States he can hardly get out of bed."

reconsideration the board may direct the taking of additional evidence (Lab. Code, § 5906), and the board is given power to direct any employee claiming compensation to be examined by a physician (Lab. Code, § 5701). In the instant case, the board did not follow this procedure and attempt to resolve any doubts it may have had with respect to the inference of industrial causation. Instead it determined in the absence of any supporting evidence to reject the inference of industrial causation, and this it may not do."

The recent opinion of our Supreme Court in *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451], while distinguishable, is nevertheless authoritative for our viewpoint that the Board's decision should be reversed in this case. In the *Garza* case, the Board rejected the referee's finding that the petitioner was injured on the job. There, as here, the Board disbelieved petitioner because he did not immediately report the injury to his co-employees and because he did not inform his doctors or the employer's compensation coordinator of the accident until several weeks later. The Supreme Court annulled the decision, holding that it was not based on substantial evidence but rather was based on circumstantial evidence which at best was speculative and conjectural. The court summarized the applicable rules as follows: "Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. (*Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 439 [71 Cal. Rptr. 684, 445 P.2d 300].) This rule is binding upon the board and this court. (*Id.* at p. 439.) Moreover, although the board is empowered to resolve conflicts in the evidence (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 93 [199 P.2d 302]; *Pacific Freight Lines* v. *Industrial Acc. Com.,* 26 Cal.2d 234, 240-241 [157 P.2d 634]), to make its own credibility determinations (*McAllister* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313]; *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287]; *Alexander* v. *Workmen's Comp. App. Bd.,* 262 Cal.App.2d 756, 758 [69 Cal.Rptr. 190]; *Wilhelm* v. *Workmen's Comp. App. Bd.,* 255 Cal. App.2d 30, 33 [62 Cal.Rptr. 829]), and upon reconsideration to reject the findings of the referee and enter its own findings on the basis of its review of the record (Lab. Code, § 5907; *Buescher* v. *Workmen's Comp. App. Bd.,* 265 Cal.App.2d 520, 529 [71 Cal.Rptr. 405]; *Wilhelm* v. *Workmen's Comp. App. Bd., supra; Montyk* v. *Workmen's Comp. App. Bd.,* 245 Cal. App.2d 334, 335 [53 Cal.Rptr. 848]), nevertheless, any award, order or

decision of the board must be supported by substantial evidence in the light of the entire record (Lab. Code, § 5952; *LeVesque* v. *Workmen's Comp. App. Bd.*, 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432])."

The decision of the Appeals Board is annulled and the case remanded for further proceedings consistent with the views expressed herein.

Coakley, J.,* and Ginsburg, J.,† concurred.

A petition for a rehearing was denied February 23, 1971, and the petition of the respondent Board for a hearing by the Supreme Court was denied March 26, 1971.

---

*Retired Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.